George Rothenberg and Beatrice Rothenberg, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 4585–64. Filed June 21, 1967.

*Harry Seiden*, for the petitioners.
*Rudolph J. Korbel*, for the respondent.

OPINION

Atkins, *Judge:* The respondent determined a deficiency in income tax for the petitioners' taxable year 1961 in the amount of $49,257 and determined an addition to tax of $566.41 under section 6654 of the Internal Revenue Code of 1954 for underpayment of estimated tax. The respondent having conceded one of the issues herein, the only issue remaining for decision is whether the petitioners were entitled to elect to report gain on the sale of certain realty on the installment basis under section 453 of the Internal Revenue Code of 1954.

All of the facts have been stipulated and are so found.

The petitioners, husband and wife, are residents of New York City. They filed their joint Federal income tax return for the year 1961 with the district director of internal revenue, Brooklyn, N.Y.

On April 1, 1946, the petitioners, together with Josef Rothschild and his wife Victoria, and Ernst Rothschild purchased real estate property consisting of several contiguous rental apartment buildings in Queens County. N.Y. On April 2, 1946, Josef Rothschild and the petitioner George Rothenberg filed with the Queens County clerk a

certificate of conducting business under the name R&R Realty Co. of Forest Hills, N.Y., at the address of one of the apartment buildings purchased by them on April 1, 1946. On February 16, 1953, a certificate of discontinuance of business as partners signed by petitioner George Rothenberg and Josef Rothschild was filed with the Queens County clerk, and on the same day a business certificate for partners was filed with the clerk in which both petitioners and Josef and Ernst Rothschild certified that they were conducting business as members of a partnership named R&R Realty Co. of Forest Hills, at the same address listed on the certificate filed April 2, 1946.

In July 1960, the petitioners commenced an action in the Supreme Court of the State of New York against the Rothschilds for partition of the property purchased on April 1, 1946. The Rothschilds resisted the action, contending that the property was an asset of a partnership between the petitioners and the Rothschilds, and that at the time of the suit the partnership affairs between the partners and with the partnership's creditors had not been adjusted. The record does not show the outcome of the suit, but the petitioners state on brief that the action did not reach trial and was discontinued.

By a contract dated October 10, 1960, the petitioners and the three Rothschilds signed an agreement to sell the above property to a third party for $925,000. The transaction was consummated on March 21, 1961. The purchaser took the property subject to an existing first mortgage of $325,583.67, paid $152,179.15 in cash, received credit for a $25,000 deposit made in 1960, and also received credit for several minor items, and gave the sellers a bond and purchase-money second mortgage, bearing interest at 5½ percent, for the unpaid balance of $414,416.33. Such mortgage was payable as follows: $115,000 on or before December 21, 1962; monthly installments commencing April 21, 1963; and any remaining balance on March 21, 1971. The second mortgage instrument recited that the petitioners had an undivided one-half interest in the mortgage and that each of the three Rothschilds had an undivided one-sixth interest, and provided that the payments thereunder should be paid to the mortgagees in accordance with their respective interests in the mortgage.

The above property was operated under the name R&R Realty Co. of Forest Hills (hereinafter referred to as Realty) from the time of its acquisition until the sale thereof. Realty leased the apartments, collected the rents, and paid the bills for interest, taxes, insurance, and all other bills relating to the operation of the property.

Over the period April 1, 1946, through March 31, 1961, Realty filed partnership returns (Form 1065) on the basis of a taxable year ended March 31. In the partnership return for the taxable year ended March 31, 1961, Realty reported a long-term capital gain of $539,041.38 on the

sale of the property, showing gross sales price of $925,000, adjusted basis of $357,043.67, and selling expenses of $28,914.95. Such return reported partners' shares of such capital gain as follows: $269,520.69 to the petitioners; $179,680.46 to Josef and Victoria Rothschild; and $89,840.23 to Ernst Rothschild. Such return showed that the only source of income was from rentals. It showed gross rental income of $106,547.97, deductions of $85,788.69, and net rentals of $20,759.28. The deductions claimed consisted of cleaning expenses, depreciation, insurance, interest, janitor and hauling costs, legal and accounting fees, repairs, supplies, taxes and licenses, telephone, utilities, carpentry, elevator maintenance, stationery and postage, and certain unclassified expenses. The return reported that the partners' shares in the net rental income was as follows: $10,379.64 to the petitioners; $6,919.76 to Josef and Victoria Rothschild; and $3,459.88 to Ernst Rothschild. In such return no election was made to report the capital gain on the installment method. The balance sheet, Schedule L, forming a part of the return, showed among assets at the beginning of the taxable year buildings and other fixed assets in the amount of $369,304.17, and among liabilities mortgages, notes, and long-term loans payable in the amount of $337,526.58, and partners' capital accounts in the amount of $17,959.90. Such balance sheet showed among assets as of the end of the taxable year a mortgage receivable in the amount of $414,416.33, and among liabilities partners' capital accounts in the amount of $420,260.56.

In their return for the taxable year ended December 31, 1961, the petitioners showed total long-term capital gain upon the sale of the realty of $542,006.57.[1] They also showed therein that the amount of the proceeds received in the taxable year amounted to $177,179.15 of which 91.6177 percent, or $162,327.46, constituted total gain to be accounted for in that year on the installment method, of which their reportable share amounted to $81,163.73.[2] The petitioners also reported certain other long-term and short-term capital gains and certain long-term capital losses, and after making the proper offsets and taking the deduction of 50 percent of the amount of the excess of net long-term capital gain over net short-term capital gain, reported income from the sale or exchange of property in the amount of $56,385.48.

In the notice of deficiency the respondent determined that the income derived by the petitioners from capital gains was $148,015.41 instead of $56,385.48 as reported by them (an increase of $91,629.93).

---

[1] It is to be noted that the gain of $542,006.57 on the sale is $2,965.19 more than the gain reported on the partnership return. There is no explanation of this difference, although the petitioners also reported a corresponding decrease in their share of ordinary income from "Partnerships * * * R&R Realty of Forest Hills * * *."

[2] Josef and Victoria Rothschild in their return for the year 1961 reported their allocable share of the profit on the sale of the property on the completed transaction basis.

This adjustment came about principally because of the respondent's determination that the petitioners were not entitled to employ the installment method in reporting their share of the gain derived from the above sale of property.[3]

The respondent does not question that the sale would qualify for treatment as an installment sale within the provisions of section 453 of the Internal Revenue Code of 1954,[4] but contends that the property sold constituted assets of Realty, that Realty was a partnership, and that since Realty reported the gain on the sale on the completed transaction basis, the petitioners may not elect in their return to report their share of the gain derived from the sale on the installment method, relying upon section 703(b) of the Code.[5]

Coowners who rent their property are not ipso facto partners for tax purposes. Estate of Edgar S. Appleby, 41 B.T.A. 18, affd. (C.A. 2) 123 F. 2d 700; Lena Hahn, 22 T.C. 212; and sec. 1.761–1(a)(1), Income Tax Regs.[6] However, as pointed out in the regulations, coowners may be partners if they actively carry on a trade, business, or

---

[3] The deficiency notice does not show the details of the determination. However, it seems apparent that the respondent adjusted the figure of $542,006.57 reported by the petitioners as the total gain on the transaction and determined that the gain was $528,847.20. This adjustment apparently resulted from an upward adjustment of the basis of the property on account of his disallowance of a depreciation deduction of $13,159.37 claimed in the partnership return for the year of sale. In the stipulation the respondent concedes that his disallowance of the depreciation deduction of $13,159.37 was erroneous.

[4] SEC. 453. INSTALLMENT METHOD.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—
(1) GENERAL RULE.—Income from—
(A) a sale or other disposition of real property, * * *
*          *          *          *          *          *          *
may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).
(2) LIMITATION.—Paragraph (1) shall apply—
(A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—
(i) there are no payments, or
(ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

[5] Sec. 703(b) of the Code as it existed in the taxable year 1961 provided as follows:
ELECTIONS OF THE PARTNERSHIP.—Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership, except that the election under section 901, relating to taxes of foreign countries and possessions of the United States, shall be made by each partner separately.

[6] Sec. 1.761–1(a)(1) of the Income Tax Regulations provides in part as follows: The term "partnership" is broader in scope than the common law meaning of partnership, and may include groups not commonly called partnerships. * * * Mere coownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. * * * Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if coowners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent.

financial operation. In their petition the petitioners stated that they and others purchased the property in 1946 as tenants in common, that they continued to hold the property for investment rental income until it was sold in 1961, and that no partnership relationship was created. However, on brief they appear to concede that the group of five owners is to be treated as a partnership under section 761 of the Code.[7] In any event, the burden of proof was upon the petitioners to show that they and the other individuals did not own and operate the property as members of a partnership. They have not met such burden. To the contrary, the stipulated facts show that the petitioners filed with the Queens County clerk a business certificate for partners, stating that they were conducting business as members of a partnership under the name of Realty; that Realty operated the properties from the time of their acquisition until the sale thereof; that Realty continuously filed Federal partnership income tax returns; and that in its return for the taxable year ended March 31, 1961, it treated the property as belonging to it and the mortgage received upon the sale thereof as also being its asset. Furthermore, the amount and types of expenses claimed by the partnership in its return indicate that the operation constituted the active conduct of a rental business, as distinguished from the mere holding of property for investment. See *Fackler* v. *Commissioner* (C.A. 6), 133 F. 2d 509, affirming 45 B.T.A. 708, and *Pinchot* v. *Commissioner* (C.A. 2) 113 F. 2d 718, affirming a Memorandum Opinion of this Court.

The petitioners contend that, nevertheless, they should be entitled to elect to report their share of the gain from the sale on the installment method since section 453 is a relief provision enacted for the benefit of taxpayers, and a partnership is not a taxpaying entity. In *John G. Scherf*, 20 T.C. 346, we thoroughly considered a similar case and held that a partner was chargeable with his distributive share of the capital gain reported by a partnership on the completed-transaction basis and was not entitled to elect to report his distributive share of the gain on the installment method. That case arose under the Internal Revenue Code of 1939 which did not contain a provision similar to that contained in section 703(b) of the 1954 Code. The petitioners take the position that that case was erroneously decided. We think the principle of the *Scherf* case is correct, but in any event, we think there can be no question that in the instant case the individual partners are precluded from making an election to report on the installment method in view of the specific provision of section 703(b)

---

[7] Sec. 761(a) of the Code provides in part as follows:

PARTNERSHIP.—For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate. * * *

of the 1954 Code. In this connection the petitioners state that the statute does not specifically prohibit partners from exercising the election provided by section 453. We cannot agree. Section 703(b) specifically provides that any election affecting the computation of taxable income derived from a partnership shall be made by the partnership, with an exception which is not pertinent here. In addition, the legislative history of section 703(b) removes all doubt. H. Rept. No. 1337, 83d Cong., 2d Sess., p. A222, contains the following statement:

> Subsection (b) requires that all elections (other than the election with respect to foreign taxes) affecting the computation of income derived from a partnership shall be made by the partnership. Thus, elections as to methods of accounting, *the use of the installment sales provision*, the option to expense intangible drilling and development costs, etc., must be made by the partnership and must be applicable to all partners equally. * * * [Emphasis supplied.]

S. Rept. No. 1622, 83d Cong., 2d Sess., p. 378, contains a similar statement.

It may be added that the petitioners make much of the provision of section 702(b) of the Code, which provides that the character of any item of income included in a partner's distributive share shall be determined as if such item were realized directly from the source from which realized by the partnership. Suffice it to say that such provision relates to the *character* of the item, and not to the method or time of reporting the item.

We hold that the respondent correctly determined that the petitioners must report the full amount of their share of the gain for the taxpayer year 1961. The same conclusion was reached in the unreported case of *Stone* v. *United States* (D. Colo. 1961, 61–1 U.S.T.C. par. 9486, 7 A.F.T.R. 2d 1422).

On brief the petitioners concede liability for an addition to the tax under section 6654 of the Code for underpayment of estimated tax, but question the amount thereof. The amount of such addition will be determined in connection with the recomputation under Rule 50.

*Decision will be entered under Rule 50.*