Wherry, J., concurring: I agree with the results in the opinion of the Court, and the bulk of its analysis. However, I find myself unable to abide by the logic that the opinion deploys to repudiate respondent’s gratuitous acknowledgment, in a Status Report filed May 19, 2010: “All parties agree that the basis of each purported partner’s interest in Tigers Eye Trading, LLC, is an affected item.” I. Fighting Shadows The opinion of the Court characterizes respondent’s concession as an issue of law that, if accepted, would deprive us of subject matter jurisdiction. Rejecting it as such, the opinion demonstrates “that the basis of each purported partner’s interest in Tigers Eye Trading, LLC, is [not] an affected item”, but a partnership item. The opinion of the Court, pp. 74-75, has marshaled an array of arguments and authorities into an impregnable rhetorical “Maginot Line” that, like its real-life predecessor, stands impassive guard against a construct that has not been attacked — in this case, subject matter jurisdiction. Respondent’s FPAA, which had adjusted the purported partners’ outside bases, and the timely petition filed in response, vest us with subject matter jurisdiction. Nothing that respondent has said in the Status Report of May 19, 2010, or elsewhere in the record, seeks to deprive us of this jurisdiction. But in exercising this jurisdiction, we cannot avoid confronting the Trojan horse substance latent in respondent’s concession: “that the basis of each purported partner’s interest in Tigers Eye Trading, LLC, is an affected item.”[1] 1 concur with the opinion of the Court that there exist good grounds for rejecting this substance. But in my view these grounds lie farther afield of the ones in which the opinion of the Court neatly slays the strawman of litigants stipulating away the Court’s subject matter jurisdiction. II. A Stipulation That Swallows the Law Characterizing respondent’s concession as an issue of law is problematic for three discrete reasons. First, it implies that respondent is, as it were, recanting in one breath the very regulations he recites with the next.[2] Second, it suggests that the Court of Appeals for the D.C. Circuit in Petaluma FX partners, LLC v. Commissioner, 591 F.3d 649 (D.C. Cir. 2010) (Petaluma II), aff’g in part, rev’g in part and remanding 131 T.C. 84 (2008) (Petaluma I), in accepting a similar concession, was unfaithful to its own precedent that precludes parties from “forc[ing] a federal court to render an advisory opinion * * * [by] stipulating] to the state of underlying law”. Indep. Ins. Agents of Am., Inc. v. Clarke, 965 F.2d 1077, 1078 (D.C. Cir. 1992).[3] Finally, and most troubling, it does gross disservice to the majority’s own exegesis of the proper classification of outside basis as a partnership item.[4] III. “Do Not Add to What I Command You and Do Not Subtract From It” I agree with the exposition in the opinion of the Court regarding when, under the statute and the regulations, outside basis is properly treated as a partnership item, and disagree with the dissent of Judge Holmes, who would effectively limit such treatment to those partnerships that have made a section 754 election. Judge Holmes’ reasoning reads into the statute words that are not there, while reading out of the regulations words that are palpably present. A. Grammar and Structure of Section 6231(a)(3) In explicating the definition of the term “partnership item” in section 6231(a)(3), Judge Holmes’ “‘starting point * * * [is] the language employed by Congress.’” See Holmes op. p. 179 (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 337 (1979)). However, he proceeds to implicitly add to this language. Judge Holmes begins by directing our attention “at the first part of section 6231(a)(3) — ‘[W]ith respect to a partnership, any item required to be taken into account for the partnership’s taxable year under any provision of subtitle A’.” Id. He then accuses the majority of “reconstructing]” this Code section by “leaving] out an important phrase[,] * * * the modifier ‘partnership’s’ before ‘taxable year’”. Id. But Judge Holmes’ own “deconstruction” of section 6231(a)(3) seems to be adding the restrictive nominative phrase “by the partnership” after the participial phrase “to be taken into account”.[5] The required account-taking action contemplated by section 6231(a)(3) could potentially be incumbent upon, and therefore be undertaken by, only two kinds of account-taking actors: the partnership, which is a nontaxable passthrough entity; and any of its taxable partners. To consider section 6231(a)(3) in its unadorned congressionally enacted glory, we should refrain from circumscribing the required account-taking action it contemplates. Consequently, we should desist from prespecifying either of the two types of potential account-taking actors as the posited performer of the contemplated action. Resisting any such urge, we countenance, as a partnership item, “any item required to be taken into account [by anyone] for the partnership’s taxable year under any provision of subtitle A”.[6] Because the provisions of subtitle A determine a taxpayer’s tax liability, we cannot exclude from the scope of section 6231(a)(3) the required account-taking actions of a taxpayer-partner of the given nontaxable passthrough partnership. Indeed, a comparison of the syntactical structure of section 6231(a)(3) with that of some of the substantive provisions of subtitle A, chapter 1, subchapter K, part I, titled “Determination of Tax Liability”, suggests that a partner’s required account-taking actions may very well be the primary focus of section 6231(a)(3). See, e.g., sec. 702(a) (“In determining his income tax, each partner shall take into account separately his distributive share of the partnership’s [income, gain, loss, deduction, or credit]” (emphasis supplied)); see also sec. 706(a) (“In computing the taxable income of a partner for a taxable year, the inclusions required by section 702 [for the partner’s distributive shares] and section 707(c) [for the partner’s guaranteed payments] with respect to a partnership shall be based on the income, gain, loss, deduction, or credit of the partnership for any taxable year of the partnership ending within or with the taxable year of the partner.” (Emphasis supplied.)).[7] Devoid of any constraints on the type of actor required to undertake the envisaged account-taking action, section 6231(a)(3) merely represents an “acquiescing” provision, one that abdicates to the Secretary the nettlesome task of substantively defining a partnership item.[8] Thus, a partnership item is “any item required to be taken into account * * * to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.”[9] In sum, a partnership item is what the Secretary decides it is, so long as he justifies his decision by invoking the “more-appropriately-determined” principle. So much for the nonexistent exclusions that Judge Holmes seems to import into the statute. Now, consider the applicable regulatory provisions the full import of which I believe Judge Holmes has overlooked. B. The Secretary’s Two-Step Tango The Secretary begins, unsurprisingly, by dutifully noting that his designation of partnership items will comply with the statutorily mandated “more-appropriately-determined” principle. Thus, the Secretary declares that he will designate as partnership items only those items that in his opinion are more appropriately determined at the partnership level. See sec. 301.6231(a)(3)-l(a), Proced. & Admin. Regs, (designating as partnership items those that “are required to be taken into account for the taxable year of a partnership under subtitle A of the Code [and] are more appropriately determined at the partnership level”).[10] Substantively, that regulation section represents the Secretary’s acknowledgment that the account-taking action envisaged in section 6231(a)(3) may be required of either the partnership or any of its partners. Accordingly, he formulates a two-pronged approach for classifying partnership items. One prong constitutes a direct application of the “more-appropriately-determined” principle, while the other prong comprises a recursive application of this principle. The first of the Secretary’s two prongs tackles items required to be taken into account by the partnership. It is almost definitional that any such item is more appropriately determined at the partnership level.[11] Consequently, a direct application of the “more-appropriately-determined” principle renders the item a partnership item. Let us call such partnership items direct partnership items. Included in direct partnership items is a partner’s distributive share of the partnership’s income, gain, loss, deduction, or credit. See sec. 301.6231(a)(3)-l(a)(l)(i), Proced. & Admin. Regs. The second prong of the Secretary’s two-pronged approach deals with items “required to be taken into account” within the meaning of section 6231(a)(3) — but not by the partnership. It stands to reason that this account-taking could then be incumbent only upon one or more of the partnership’s partners. For such an item, the Secretary prescribes a recursive application of the “more-appropriately-determined” principle. Under this recursive application, the given item may still be deemed more appropriately determined at the partnership level. For this, however, the item must be determinable from other determinations that the partnership is required to make, even though the partnership itself is not required to take into account the item per se. Let us call such items, which are rendered partnership items by recursively applying the “more-appropriately-determined” principle, derivative partnership items.[12] They include, among others, items of contribution and distribution. See sec. 301.6231(a)(3) — l(a)(4)(i) and (ii), Proced. & Admin. Regs. Judge Holmes’ analysis fails to confront this recursive application of the “more-appropriately-determined” principle set out in the regulations and, therefore, ignores derivative partnership items. What does all of this mean for classifying as a partnership item a partner’s basis in his partnership interest; i.e., the partner’s outside basis? If the partnership is required to account for its partners’ outside bases, then under the first prong of the two-pronged approach detailed above, outside bases are direct partnership items. Thus, as Judge Holmes points out, if the partnership has a section 754 election in effect, then the partnership will account for its partners’ outside bases, which will consequently be treated as partnership items.[13] What if the partnership is not required to account for its partners’ outside bases? Then, any one partner’s outside basis may, or may not, be a partnership item. Outside basis will be a partnership item if it is determined conclusively by partnership items, whether direct or derivative. If all determinants necessary and sufficient to compute outside basis are direct or derivative partnership items, then another recursive application of the “more-appropriately-determined” principle renders the object of their determination, i.e., the outside basis in question, itself a derivative partnership item.[14] On the other hand, so long as even one necessary determinant of the given outside basis is incapable of being classified as a partnership item, under either of the Secretary’s two prongs, then outside basis cannot be a partnership item.[15] Consistent with this “all-or-nothing-at-all” rationale, the Secretary provides that “The basis of a partner’s partnership interest is an affected item to the extent it is not a partnership item.” Sec. 301.6231(a)(5)-l(b), Proced. & Admin. Regs. IV. A Fact-Specific Inquiry — Always and Everywhere The parsing of the regulations set forth above completely accords with, and perfectly complements, that of the opinion of the Court. But having done the heavy lifting, the opinion of the Court seems to have tripped at the very end. The opinion fails to account for the obvious implication of its own painstaking analysis: Under the regulations, whether outside basis is a partnership item depends upon the facts and circumstances unique and specific to that partnership and partner.[16] This implication does not lose validity simply because in a partnership-level proceeding we make a finding to disregard the partnership form before us. Disregarding a partnership means we are not respecting the garb in which the taxpayer has dressed up his investment transaction. The mere fact that the form of the investment is not respected, however, does not by itself reduce to zero the amount of the taxpayer’s investment that we will recognize for tax purposes.[17] Ascertaining the amount of the taxpayer’s investment that will be recognized for tax purposes may, or may not, entail looking beyond “the partnership books and records”. See, e.g., op. Ct. p. 125. This cannot be known in advance, and will be unique and specific to the disregarded partnership and the purported partner.[18] V. Respondent’s “Advocacy” As shown above, and as the majority itself points out, applying the regulations to establish whether outside basis is an affected item or a partnership item focuses critically on “the extent that a determination of an item relating to a contribution [or a distribution] can be made from * * * determinations that the partnership is required to make”. Sec. 301.6231(a)(3)-l(c)(2), Proced. & Admin. Regs, (flush language) (emphasis supplied); see also sec. 301.6231(a)(3)-1(c)(1), Proced. & Admin. Regs. (“The critical element is that the partnership needs to make a determination with respect to a matter for the purposes stated” (emphasis supplied)); sec. 301.6231(a)(3)-l(a)(4), Proced. & Admin. Regs, (“determinations that the partnership is required to make [include those] with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner”). A. Respondent’s Steadfast Faith in the Regulations Whether or not the (disregarded) partnership before us, Tigers Eye Trading, LLC, is “required”, or “needs”, to make a determination has to be an issue unique or specific to that given partnership form. Thus, if the regulations are valid, and we are applying them properly, then conceding that outside basis is an affected item here could only mean that this particular partnership entity is not required to make the determinations that will suffice for computing the purported partners’ outside bases. Respondent has by no means renounced the Secretary’s regulations. Far from it, he continues to pay homage to them at every turn. Therefore, respondent’s statement in the May 19, 2010, Status Report that "All parties agree that the basis of each purported partner’s interest in Tigers Eye Trading, LLC, is an affected item” is not, and cannot be deemed, an attempt to stipulate the applicable law. That law, embodied in the Secretary’s regulations, entails a fact-specific inquiry for concluding that outside basis is an affected item. Respondent’s conclusory statement regarding the affected item status of outside basis, therefore, must evince, at its core, a concession of fact. I would portray this “garrulity of advocacy” on respondent’s part for what it essentially is — an attempt at stipulating facts. Identifying it as such, I would disregard it because the record shows that it is incorrect. B. Salvaging Respondent From His Zeal As the trial court, we enjoy an element of discretion in deciding whether to accept respondent’s proffered stipulation. Under Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989) (citing Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1232 (5th Cir. 1978), and Jasionowski v. Commissioner, 66 T.C. 312, 317—318 (1976)), “We may disregard stipulations between parties where justice requires it if the evidence contrary to the stipulation is substantial or the stipulation is clearly contrary to facts disclosed by the record.” See also Dillon, Read & Co. v. United States, 875 F.2d 293, 300 (Fed. Cir. 1989) (holding that parties remain “free to stipulate to whatever facts they wish, except they may not stipulate to facts known to be fictitious”). I have little hesitation in concluding that the attempted stipulation “is clearly contrary to facts disclosed by the record.” Examining the record here, it is readily apparent that the determinants necessary and sufficient for computing the outside bases of Tigers Eye Trading LLC’s purported partners were themselves required to be determined at the partnership level. In particular, each outside basis is conclusively determined by a set of determinants comprising the following two kinds of items: (1) the purported partner’s distributive shares of Tigers Eye Trading LLC’s items of income, gain, loss, deduction, or credit; and (2) the purported partner’s items of contributions and distributions, the bases of each of which could be derived from determinations required to be made by Tigers Eye Trading LLC. The first category of determinants consists of direct partnership items under section 301.6231(a)(3) — l(a)(l)(i), Proced. & Admin. Regs., while the second represents derivative partnership items under section 301.6231(a)(3) — l(a)(4)(i) and (ii), Proced. & Admin. Regs. Because the outside basis of each purported partner of Tigers Eye Trading LLC is conclusively determined entirely by partnership items, recursively applying the “more-appropriately-determined” principle under the second prong of the Secretary’s two-pronged approach, discussed above, yields a derivative partnership item. I, therefore, have little doubt that respondent’s attempt at stipulating facts that render outside basis an affected item is irreconcilable with the facts disclosed by the record. I am equally confident that justice requires us to disregard the attempted stipulation. Treating outside basis as an affected item of Tigers Eye Trading LLC would preclude us from readjusting the purported partners’ inflated outside bases in this partnership-level proceeding. This readjustment would have to await partner-level actions, even though Tigers Eye Trading LLC was required to make all the determinations necessary and sufficient to compute the purported partners’ outside bases. Specifically, no additional information would become available for scrutiny at the subsequent partner-level actions that is not forthcoming now in this partnership-level proceeding. TEFRA, howsoever unwieldy its current practice may have become,[19] was undoubtedly motivated in large part by the twin goals of conservation of judicial effort and consistent treatment of all partners in the same partnership.[20] Both goals would be undermined by necessitating partner-level actions for readjusting inflated outside bases when all the determinants for conclusively determining such outside bases are themselves required to be determined at the partnership-level and are consequently within our purview here. C. Wings of Ignominy No discussion of accepting or rejecting respondent’s concession can be complete without acknowledging and addressing the fact that the Court of Appeals for the D.C. Circuit had, in Petaluma II, accepted a similar concession. Does Golsen tie our hands here and require us to accept respondent’s concession regardless of our own analysis of the issue? This is a difficult question, and it bears careful consideration. I submit that we have sufficient latitude to reject respondent’s concession without violating the Golsen rule. At trial in Petaluma I, 131 T.C. 84, the Commissioner never even hinted, much less announced, that outside basis was an affected item of Petaluma, the disregarded partnership at issue in that case. However, on appeal, in Petaluma II, the Commissioner’s advocacy took wings, Icarus-like, and soared close to the sun. His speech, and even more, his silence, strongly suggested that the outside bases of Petaluma’s purported partners were affected items. He stated on brief that “A partner’s outside basis is generally an 'affected item,’ rather than a 'partnership item’”, implying that the purported partners’ outside bases in that case were also affected items.[21] The Commissioner strengthened this implication by his choice of words in responding to “The argument of Petaluma and the amicus * * * that the Tax Court created an improper exception to the general rule that outside basis is an affected item that must be determined in a partner-level proceeding.” The Commissioner responded that “The Tax Court created no such exception.” The Court of Appeals seems to have taken this denial at face value. Thus, the court observed that “On appeal the Commissioner concedes that outside basis is not a partnership item in this case.” Petaluma II, 591 F.3d at 654 (emphasis supplied). Following this observation, the court seemingly ipso facto “rejected the Tax Court’s conclusion that outside basis was a partnership item in this case”. Id. at 655 (emphasis supplied). Though the Commissioner went on to argue that “the concept of outside basis in a disregarded partnership is total nonsense”, the damage had been done, the wax melted, and his flight abruptly ended. By comparison with the Commissioner’s apparently deliberate distance from the issue in Petaluma I, and his “silence as acceptance” of outside bases as affected items in Petaluma II, respondent has left nothing unspoken here. He unequivocally declares that “All parties agree that the basis of each purported partner’s interest in Tigers Eye Trading, LLC, is an affected item.” Because we were not confronted with a similar declaration in Petaluma I, the Court was denied the opportunity to develop a record at trial, in sufficient detail, to enable an objective evaluation of the assertion.[22] Deprived of such a record developed at the trial stage, the Court of Appeals for the D.C. Circuit did not have any evidentiary basis for rejecting what seemed to be a unilateral concession of fact on the Commissioner’s part. To paraphrase a different Court of Appeals, trial courts penalize taxpayers, while appellate courts review records.[23] Clearly, the Commissioner’s subtler, albeit similar, concession was accepted in Petaluma II against a backdrop devoid of any contrary facts established at trial. Consequently, I do not believe Golsen forecloses us from rejecting an unadulterated version of that concession here. Our decision to reject the concession, however, must be supported by sufficient, and sufficiently detailed, findings of fact along the lines outlined above. So long as we do not abuse our discretion and make clearly erroneous factual findings, our rejection should pass muster under a reviewing court’s deferential gaze. In sharp contrast, the majority’s approach of treating the concession as an issue of law seems to unnecessarily heighten the risk of reversal. VI. Conclusion Relying on the Cal-Maine Foods standards for disregarding factual stipulations, I would tune out respondent’s “overzealous advocacy”, and instead, turn my ear to the Secretary’s much more “parsimonious reasoning”. Applying this reasoning to the facts clearly disclosed by the record, the Court should conclude “that the basis of each purported partner’s interest in Tigers Eye Trading, LLC, is [not] an affected item”, but a partnership item. Accordingly, we should sustain the accuracy-related penalty.[24] Hat,pern, J., agrees with this concurring opinion. The opinion of the Court, pp. 74-75, cites several cases in support of retaining subject matter jurisdiction here. However, none of these cases seems to advance the majority’s cause of rejecting respondent’s concession. Emblematic of these cases that “only go so far” is Charlotte’s Office Boutique, Inc. v. Commissioner, 121 T.C. 89, 102 (2003), aff’d, 425 F.3d 1203 (9th Cir. 2005). In that case, we declined to give up jurisdiction even after the Commissioner conceded that his initial determination, made in a sec. 7436 notice of determination which had furnished the “ticket to the Court”, was incorrect. In the notice of determination, the Commissioner had determined, with respect to the employer who had petitioned the Court, “that ‘Other Workers’ had during that year [at issue] received $2,585 of wages from petitioner”. Id. at 103. However, “The Commissioner had conceded before the Tax Court that appellant did not have any ‘other workers.’” Charlotte’s Office Boutique, Inc. v. Commissioner, 425 F.3d at 1206 n.2. Though we did not cede jurisdiction, we did accept the substance of the Commissioner’s concession: “that appellant did not have any other workers for those years and that appellant had treated Mrs. Odell as an employee in those years.” Id. at 1207. Consequently, we went on to “sustain respondent’s determination that petitioner paid all of the disputed amounts to Ms. Odell as wages.” Charlotte’s Office Boutique, Inc. v. Commissioner, 121 T.C. at 106. A straightforward application of Charlotte’s Office Boutique would result in our exercising jurisdiction here to find “that the basis of each purported partner’s interest in Tigers Eye Trading, LLC, is an affected item.” See infra pt. IV (highlighting that under the Secretary’s legislative regulations issued pursuant to sec. 6231(a)(3), whether outside basis is an affected item or a partnership item is a factual determination). The opinion of the Court itself points out that respondent swears allegiance to these regulations, notwithstanding his statement in the May 19, 2010, Status Report that outside basis is an affected item here. A similar concession made by the Commissioner on appeal in Petaluma II was also accompanied by similar shouts of fealty to the regulations. The Commissioner has in other instances, quite understandably, sought to hedge his litigating risk by seeking to cover all his bases. See, e.g., Chief Counsel Notice CC-2009-11 (Mar. 11, 2009) (recommending the “protective” issuance of a “notice of deficiency” after a partnership-level decision becomes final, even if there remain “no affected items which require partner level determinations” within the meaning of sec. 6230(a)(2)(A)(i)). Here, however, the opinion of the Court would have us believe that respondent is, in effect, disowning the very flag under which he has mounted his challenge. Surely that goes way beyond risk-aversion and borders on abject surrender (and schizophrenia). Though litigants cannot forfeit subject matter jurisdiction, they remain free to stipulate facts that in practice may preclude a court from exercising jurisdiction that in principle the court enjoys. The Court of Appeals for the D.C. Circuit is acutely aware of the distinction between delineating the theoretical limits of subject matter jurisdiction and finding facts enabling its exercise. See, e.g., Owens v. Republic of the Sudan, 531 F.3d 884, 890 (D.C. Cir. 2008) (discussing the implications of “the authority * * * to make a finding of fact upon which subject matter jurisdiction depends, as opposed to the authority to define those conditions in the first place” (emphasis supplied)). See infra pt. IV. Judge Holmes’ misconception of sec. 6231(a)(3) apparently stems from misconstruing the prepositional phrase “for the partnership’s taxable year”. Judge Holmes seems to believe that this phrase modifies the contemplated action — account taking. Consequently, he views "the partnership’s taxable year”, which is the object of the preposition “for”, as the recipient (or, as grammarians call it, patient) of the contemplated account-taking action. See Holmes op. pp. 184 — 185 (“Tigers Eye itself was never required to determine its partners’ outside bases, and its partners’ outside bases had no effect on its taxable year.” (Emphasis supplied.)). In point of fact, however, the prepositional phrase "for the partnership’s taxable year” in sec. 6231(a)(3) modifies, not the contemplated account-taking action, but the “required” character of this action. Thus, the “for” before “the partnership’s taxable year” denotes “with respect to”. This is the same meaning that "for” takes in the various substantive provisions of subch. K, where it appears before “partnership’s taxable year” or “taxable year of the partnership”. See infra note 7 and accompanying text. Judge Holmes preemptively denies that “for” implies “with respect to” in sec. 6231(a)(3) because, he claims, “section 6231(a)(3) already requires the item be related to or ‘with respect to a partnership.’ ” See Holmes op. p. 180. Judge Holmes forgets, however, that the item in question must be related not only to the specific partnership, but also to the given taxable year of that partnership. The cause of action in a partnership-level proceeding, after all, is a discrete taxable year of the partnership. The explicit insertion of the indefinite pronoun is supplied to preclude an implicit insertion of a demonstrative counterpart. The emphasized prepositional phrase in sec. 706(a), “for any taxable year of the partnership” is modifying the “required” nature of the “inclusions” by the partner. The “for” before “any taxable year of the partnership” connotes “with respect to”. See supra note 5 (discussing an identical use of “for” in sec. 6231(a)(3)); see also infra note 10 (discussing the same in sec. 301.6231(a)(3)-l(a), Proced. & Admin. Regs.). Judge Holmes imbues the first half of the definition of the term “partnership item” in sec. 6231(a)(3) with a significance that belies the term’s historical origin. He believe[s] Congress added the phrase “to the extent regulations prescribed by the Secretary provide that * * * such item is more appropriately determined at the partnership level than at the partner level” to section 6231(a)(3), so that the Secretary would not pervert and subvert the preceding part of section 6231(a)(3)’s definition — as the majority does today — in promulgating regulations listing what are partnership items. Congress wanted to kick the ladder out from under the Secretary if he went picking fruit that Congress didn’t want picked at the partnership level. * * * [See Holmes op. note 7.] Legislative history, however, clearly reflects that Congress was concerned, not with how high up a fruit-bearing tree the Secretary might reach, but instead with how often courts were forced to return to the same tree. Both the House conference report and the so-called Blue Book accompanying TEFRA use the term “partnership item” in discussing pre-TEFRA law with no indication that the term’s connotation would undergo a qualitative transformation as a consequence of the enactment of TEFRA. To the contrary, both reports advance, as a primary motivation for enacting TEFRA, the consistent tax treatment of any one partnership item across all partners in the same partnership. The House conference report, H.R. Conf. Rept. No. 97-760, at 62 (1982), 1982-2 C.B. 600, 662, notes that under “present law”, i.e., before the enactment of TEFRA, “partnerships are not taxable entities!!;] * * * partnerships are required to file an annual information retum[;] * * * [but] adjustments are made to each partner’s income tax return”. (Emphasis supplied.) The report bemoans the fact that as a result of the foregoing, “a judicial determination of an issue relating to a partnership item generally is conclusive only as to those partners who are parties to the proceeding.” Id. (emphasis supplied). In discussing how TEFRA would “promote increased compliance and more efficient administration of the tax laws”, the report comments that pursuant to TEFRA, other than certain limited exceptions, “the tax treatment of any partnership item is to be determined at the partnership level”. Id. (emphasis supplied). The Blue Book, Staff of the Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 267 (J. Comm. Print 1982), repeats the language quoted above. In addition, the Blue Book observes that before enactment of TEFRA, “Duplication of manpower and administrative and judicial effort was required in some cases to determine the aggregate tax liability attributable to a single partnership item. Inconsistent results could be obtained for different partners with respect to the same item.” Id. at 268 (emphasis supplied). As shown supra notes 5 and 7 and the accompanying text, the restrictions “with respect to” the partnership and the partnership’s taxable year in sec. 6231(a)(3) merely ensure that a partnership-level proceeding does not exceed the bounds of the cause of action; i.e., only one partnership, and only one of its taxable years, should remain the subject of each adjudication in a given partnership-level proceeding. Note again the use of the prepositional phrase “for the taxable year of a partnership”. Again, the phrase is modifying, not the envisaged account-taking action, but the “required” character of this action. And, again, “for” indicates “with respect to”. See supra notes 5 and 7. TEFRA envisages that a partnership-level proceeding be concluded before partner-level actions commence. See sec. 6225. In GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 525 (2000), we had followed Maxwell v. Commissioner, 87 T.C. 783 (1986), and its progeny, to hold invalid an affected items notice of deficiency issued “prior to completion of the TEFRA partnership procedures”. Assume arguendo that an item required to be taken into account by the partnership is nonetheless not considered more appropriately determined at the partnership level. Because this item is required to be taken into account by the partnership, it may, indeed quite possibly will, play a definitive role in the partnership-level proceeding. However, because it is not considered more appropriately determined at the partnership level, the item will be beyond the purview of the partnership-level proceeding. Thus, the partnership-level proceeding will remain unresolved until the item in question is conclusively determined — presumably at the partner level. But the latter itself cannot commence until the partnership-level proceeding has been concluded. Such a perverse perpetual loop could bring TEFRA’s elaborate administrative and judicial machinery to a grinding halt. The recursive application of the “more-appropriately-determined” principle evidently rests on the eminently reasonable presumption that determination of an item, for purposes of sec. 6231(a)(3), establishes a transitive relationship between the determined item and the determinants that conclusively determine it. In this context, transitivity implies that if, for example, an item is conclusively determined by two determinants, say (Di and D2), each of which, in turn, is conclusively determined by two other determinants, say (Du and Di2) and (D21 and D22), respectively, then the item in question itself is also conclusively determined by the set of (D11, D12, D2i, and D22). To see how transitivity enables a recursive application of the “more-appropriately-determined” principle, begin by considering an item, “Item A”, that is conclusively determined by several (“n”) different determinations that the partnership is required to make, call them (Ai, A2, A3, . . ., A„). Each of Ai through A„ constitutes a determinant of Item A. Each of them is also, by definition, more appropriately determined at the partnership level. The premise of a transitive relationship between the determined and its determinants renders Item A, in turn, more appropriately determined at the partnership level. Now, consider another item, “Item B”, that is conclusively determined by the aggregate set of: (1) several (“m”) different determinations that the partnership is required to make, call them (Bi, B2, B3, . . ., Bm); and (2) Item A. Recall that the determinants of Item A itself are n other determinations that the partnership is required to make; i.e., (Ai, A2, A3, . . ., An). Because determination of items is deemed transitive, Item B can be considered as conclusively determined by the union of the two sets (Al; A2, A3, . . ., A„) and (Bi, B2, B3, . . ., Bm); i.e., all determinations that the partnership is required to malee. Thus, Item B is also more appropriately determined at the partnership level. The same would apply for yet another item, “Item C”, that is conclusively determined by the aggregate set of: (1) several (“p”) different determinations that the partnership is required to make, call them (Ci, C2, C3, . . ., Cp); (2) Item A; and (3) Item B. Again, transitivity implies that Item C can be considered as conclusively determined by the union of the three sets (Ai, A2, A3, . . ., An), (Bi, B2, B3, . . ., Bm), and (Ci, C2, C3, . . ., Cp). Thus, Item C is also conclusively determined entirely by determinations that the partnership is required to make, and consequently, more appropriately determined at the partnership level. We can continue this inductive process ad infinitum. Judge Holmes argues that “The reason outside basis is a partnership item when a partnership makes a section 754 election is that such a partnership itself needs to determine its partners’ outside bases to redetermine the partnership’s own inside basis for the ‘partnership’s taxable year.’” See Holmes op. p. 182 & n.9 (citing Kligfeld Holdings v. Commissioner, 128 T.C. 192, 197 (2007); see also secs. 743(b), 754). Actually, any adjustment under sec. 743(b), which is made in “the case of a transfer of an interest in a partnership by sale or exchange or upon the death of a partner[,] * * * constitute^] an adjustment to the basis of partnership property with respect to the transferee partner only.” Sec. 743(b) (emphasis supplied). Moreover, such a basis adjustment is now no longer entirely elective. Effective for transfers after Oct. 22, 2004, the adjustment is required, not only if the partnership has a sec. 754 election in effect, but also if “the partnership has a substantial built-in loss immediately after such transfer.” Sec. 743(a). By comparison with the partner-specific adjustments to the basis of partnership property under sec. 743(b), sec. 734(b) provides for adjustments to the common basis of partnership property. These adjustments are triggered by certain lands of partnership distributions and are made to the partnership’s undistributed property. Specifically, the adjustments apply following any distribution in which the distributee partner either recognizes gain or loss or receives the distributed property with a basis different from that of the partnership before the distribution. See sec. 734(b)(1) and (2). Both contingencies, the distributee partner’s recognizing gain or loss and his receiving the distributed property with a different basis, would require the partnership to account for the distributee partner’s outside basis to ascertain the sec. 734(b) adjustment. See generally sec. 731 (governing distributee partner’s recognition of gain or loss); sec. 732 (providing rules for determining distributee partner’s basis in the distributed property); sec. 733 (specifying adjustments to distributee partner’s outside basis). As with sec. 743(b) adjustments, basis adjustments under sec. 734(b) are now no longer entirely elective. Effective for distributions after October 22, 2004, adjustments to the partnership’s undistributed property are required, not only if the partnership has a sec. 754 election in effect, but also if “there is a substantial basis reduction with respect to such distribution.” Sec. 734(a). The Commissioner appeared to be developing an analogous argument in Petaluma II but seems to have fumbled at the goal line. See Petaluma II, 591 F.3d at 654 (“On appeal the Commissioner * * in this case * * * asserts that outside basis is an affected item whose elements are mainly or entirely partnership items.” (Emphasis supplied.)). This would be the case if a partner acquires his partnership interest “as the result of a transfer of an interest in a partnership by sale or exchange or on the death of a partner”, sec. 743(b), assuming that the partnership did not have a sec. 754 election in place and further did not have “a substantial built-in loss immediately after such transfer”, id.; see also supra note 13. For a sale or exchange, under sec. 742, and sec. 1.742-1, Income Tax Regs., the purchasing partner would take an initial outside basis in the amount of his purchase price or other consideration paid. For an acquisition from a decedent partner, the acquiring partner would be entitled under sec. 1014 to a “stepped-up basis”. In neither case would the partnership have any reason to keep track of the basis of the partnership interest in the hands of the transferee partner. This could also be the case if an individual contributes built-in loss personal use property for business use by the partnership. Under Au v. Commissioner, 40 T.C. 264 (1963), aff’d, 330 F.2d 1008 (9th Cir. 1964), the partnership would take a basis in the contributed property in the amount of: (1) its fair market value at the time of contribution, or (2) its adjusted basis in the contributing partner’s hands, whichever is lower. See also sec. 1.167(g)-1, Income Tax Regs. (“In the case of property which has not been used in the trade or business or held for the production of income and which is thereafter converted to such use, the fair market value on the date of such conversion, if less than the adjusted basis of the property at that time, is the basis for computing depreciation.”). If the contributed property had a built-in loss at the time of contribution, then the partnership will receive the property with a fair market value basis. The partnership will presumably have no reason to keep track of the contributing partner’s historical cost basis in the contributed property. However, under sec. 722, the contributing partner’s basis in his partnership interest should be his adjusted basis in the contributed personal use property. The same result can obtain even for contributions of business use property if the partnership does not maintain “book capital accounts” in accordance with the capital account maintenance rules of sec. 1.704 — l(b)(2)(iv), Income Tax Regs. Assume, for simplicity, that the partnership determines each partner’s distributive share of income, gain, loss, deduction, or credit “in accordance with the partner’s interest in the partnership” under sec. 704(b). If a partner contributes either personal use or business use property with a built-in loss to such a partnership, for the partnership’s business use, then under sec. 704(c)(l)(C)(ii), the partnership will take a fair market value basis in the contributed property. The contributed property’s “built-in loss shall be taken into account only in determining the amount of items allocated to the contributing partner”. Sec. 704(e)(l)(C)(i). Once the partnership no longer holds the property, say as a result of a distribution to a partner other then the contributing partner, the partnership will presumably have no reason to keep track of the contributing partner’s historical cost basis in the contributed property. Finally, an individual or corporate partner may be required to readjust its basis in its partnership interest under various provisions of the Code for reasons unrelated to changes in the partnership’s operations. The partnership would ordinarily have no reason to keep track of such readjustments. Examples of such readjustments include the following. An insolvent partner may reduce the basis of his partnership interest (along with that of other unrelated assets he owns) under sec. 108(b), which demands tax attribute reduction as the price for the insolvency exclusion of cancellation of indebtedness income. Unless the partner’s insolvency affects, or arises from, operations of the partnership, the latter will have no reason to keep track of such a basis reduction under sec. 108(b). A corporate partner may adjust its basis in its partnership interest for the “recapture” imposed by sec. 1363(d) and sec. 1.1363-2, Income Tax Regs., which provide a “look-through rule” for certain partnership inventory upon the tax-free contribution of a partnership interest from a C corporation to an S corporation. Note that the partnership’s accounting remains unaffected unless it specifically elects to adjust the basis of the inventory at issue, pursuant to sec. 1.1363-2(e), Income Tax Regs. This election is different from, and not covered by, a sec. 754 election. In theory, this could be an inquiry without bounds. “The determinations illustrated in * * * [the regulations] that the partnership is required to make are not exhaustive; there may be additional determinations that the partnership is required to make”. Sec. 301.6231(a)(3)-l(c)(l), Proced. & Admin. Regs. Moreover, “failure by the partnership actually to make a determination (for example, because it does not maintain proper books and records) does not prevent an item from being a partnership item.” Id. As a practical matter, however, in any given partnership-level case before us, litigants can be expected to isolate and describe the discrete determinations that the partnership is, or is not, required to make that control the classification of outside basis as a partnership item. The opinion of the Court states that “Solely from these determinations [relating to disregarding the partnership form], it can be determined with absolute certainty that there can be no outside basis in the nonexistent partnership interest.” See op. Ct. p. 119. It is indisputable that outside basis becomes a conceptual nullity once we disregard the partnership form. However, that self-evident proposition is not necessarily dispositive for the purpose at hand — sustaining a sec. 6662 accuracy-related penalty on grounds of a gross valuation misstatement under sec. 6662(e) and (h). That requires, for the tax year at issue, readjusting downwards to at least one-fourth “the adjusted basis of any property * * * claimed on any return of tax imposed by chapter 1”. Sec. 6662(e)(1)(A). Outside basis would become relevant in this readjustment calculus if a purported partner of a disregarded partnership claims on his tax return a loss on the sale of property, the basis of which is derived from his claimed outside basis in the disregarded partnership. Such property could be the purported partner’s claimed partnership interest, or (as here) property other than money received in a claimed liquidation distribution. In either case, the conceptual nullity of outside basis would not by itself allow us to readjust down to zero the basis of such sold property. Surely we would not ignore any actual cash, in U.S. dollars (the functional currency for a U.S. taxpayer), that the purported partner had invested in the partnership, merely because we are ignoring the partnership form. Thus, if the purported partner had purchased his claimed partnership interest from a third party, his purchase price would not evaporate and become a tax nullity, even though his outside basis does so, as a consequence of disregarding the partnership. In any sale of the claimed partnership interest, or of the property other than money received in a claimed liquidating distribution, the purported partner would still be allowed to recover tax free the amount of his actual purchase price; i.e., the underlying transactions would be treated as engaged in by the purported partner directly. See supra note 16 (discussing how a theoretically unbounded inquiry will, as a practical matter, be framed and rendered tractable by the litigants). See op. Ct. note 29 (discussing the “fiendishly complicated” and ill-fitting changes to TEFRA. made by TRA 1997). See generally Staff of the Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 268 (J. Comm. Print 1982) (observing that before enactment of TEFRA, “Duplication of manpower and administrative and judicial effort was required in some cases to determine the aggregate tax liability attributable to a single partnership item. Inconsistent results could be obtained * * * with respect to the same item.”). Though the statement leaves open the possibility of outside basis being a partnership item of some other partnership, it seems an excessively narrow construction of the Secretary’s regulations discussed supra pt. III. Petaluma I was decided “on the parties’ cross-motions for summary judgment under Rule 121.” 131 T.C. 84. Therefore, the Court did not have reason to consider the determinations that the disregarded partnership may, or may not, have been required to make, and that, in turn, may, or may not, have conclusively determined the purported partners’ outside bases. Moreover, the Court had no reason to require the parties to identify the factual issues governing this inquiry. See supra note 16 and accompanying text. Cf. United States v. Poynter, 495 F.3d 349, 351-352 (6th Cir. 2007) (“While trial judges sentence individuals face to face for a living, we review transcripts for a living. No one sentences transcripts. All of this suggests that we should acknowledge the trial court’s comparative advantages — its ring-side perspective on the sentencing hearing and its experience over time in sentencing other individuals — and give considerable deference to their sentencing decisions.” (Emphasis supplied.)). Classifying outside basis as a partnership item brings us most, but not all, of the way to sustaining a 40% gross valuation misstatement penalty here. To get to the finish line, we need one more recursive application of the “more-appropriately-determined” principle. A 40% penalty applies under sec. 6662(a), (e) and (h) “to any portion of an underpayment of tax required to be shown on a return, if * * * the adjusted basis of any property [4] * * claimed on any return of tax imposed by chapter 1 is * * ’ [400] percent or more of the amount determined to be the correct amount of such [4] * * adjusted basis”. Such property here is the “property (other than money) distributed by a partnership to a partner in [a claimed] liquidation of the partner’s interest”. Sec. 732(b). Because no money was included in the claimed liquidating distribution, “The basis of [such] property * * * shall be an amount equal to the adjusted basis of such partner’s interest in the partnership”. Id. Since outside basis is a partnership item here, we can sustain a readjustment down to zero of each purported partner’s interest in the disregarded partnership. The basis in the hands of a purported partner of property other than money received in a claimed liquidation distribution is conclusively determined by determinations that the partnership is required to make and “the adjusted basis of such partner’s interest in the partnership”. Id. The presumption of transitivity of determinations renders the basis of the claimed liquidating distribution more appropriately determined at the partnership level, and therefore, a partnership item. See supra note 12. Hence, we can sustain readjusting the basis of the claimed liquidating distribution down to equal the readjusted outside basis of zero. The resulting valuation misstatement is “gross” enough to sustain the 40% penalty.